UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

Mir Mohammed                                                Case No.: 13-73191-ast
                                                            Chapter 7


                        Debtor.
-----------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER
## DENYING DEBTOR'S MOTION TO REOPEN

Pending before the Court is the motion filed by the former debtor, Mir Mohammed

("Debtor"), seeking to reopen her no asset chapter 7 case to schedule a previously undisclosed

debt.  The central issues here are: (i) whether an unscheduled debt is nonetheless automatically

discharged in a no asset chapter 7 case; and, if so, (ii) whether a closed case should be reopened

to schedule the unscheduled debt.  The courts of appeals which have addressed the discharge of

an unscheduled debt are split, and the Second Circuit has not yet ruled on it.  For the reasons to

follow, this Court concludes that the following test should be applied in these circumstances: a

chapter 7 no asset case should not be reopened to allow an undisclosed debt to be scheduled

unless: (i) the debtor or creditor can state a plausible basis for seeking a determination that the

debt at issue does or does not fall within the category of non-dischargeable debts listed in

Sections 523(a)(2), (4) or (6); or (ii) the creditor can state a plausible basis for the court to

determine that assets may become available to distribute to creditors; or (iii) prejudice to either

party which can be remedied by reopening the case has been demonstrated.  Applying this test,

the Motion will be denied.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b)

and 157(b)(2)(A), and the Standing Orders of Reference in effect in the Eastern District of New

York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro*

*tunc* as of June 23, 2011.

## Findings of Fact and Conclusions of Law

The following constitutes the Court's findings of fact and conclusions of law to the extent

Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") so requires.

*See* FED. R. BANKR. P. 7052.[1]

## Background and Procedural History

On September 5, 2012, Jacob Milton commenced an action before the Queens County

Supreme Court styled *Jacob Milton v. Noor Mohammed, Mir Mohammed and Island Trading*

*Enterprise, Inc.*, under index number 18478/2012, seeking damages based on alleged breaches of

a loan agreement by Debtor and others (the "Contract Action").  No answer was filed, so Mr.

Milton moved for a default judgment against all of the named defendants.  On January 27, 2013,

the state court entered an order granting the default judgment motion as to liability only.  On

February 14, 2013, after holding an inquest on the amount of Mr. Milton's damages, the state

court entered a judgment in Mr. Milton's favor against Debtor and her co-defendants in the

amount of $430,958.23 (the "Judgment").

On June 14, 2013 (the "Petition Date"), Debtor filed a voluntary petition for relief under

chapter 7 of the Bankruptcy Code, along with her bankruptcy schedules and statement of

financial affairs ("SOFA").  Although Debtor listed thirty five unsecured creditors and three

secured creditors holding approximately $598,509 in claims, she did not list the Judgment in her

---

[1] These facts are derived from the uncontested allegations in the parties' respective pleadings and from the public docket in this case.

schedules, Mr. Milton in her creditor matrix, or the Contract Action in her SOFA.  Debtor was

represented by counsel when preparing and filing her bankruptcy petition and related papers.

Shortly after the Petition Date, the Clerk's Office generated and mailed notice of the

commencement of Debtor's case to all creditors listed in her schedules.  In that notice, the case

was labeled a "no asset case"; thus, creditors were directed not to file proofs of claim until given

notice to do otherwise; a date for the § 341 meeting of creditors was also provided.  Mr. Milton

did not receive this notice.

Allan B. Mendelsohn was duly appointed and qualified as the chapter 7 trustee of

Debtor's bankruptcy estate (the "Trustee").

On September 18, 2013, Debtor received a discharge.  [dkt item 16]

On December 30, 2013, the Trustee issued his "Report of No Distribution".  The report

indicated that after a diligent inquiry into Debtor's financial affairs, the Trustee was unable to

discover any non-exempt estate property available for distribution to Debtor's creditors.

Accordingly, the Clerk's Office was not required to give notice to creditors to file claims.  That

same day a final decree was entered [dkt item 18] and Debtor's case was closed.

Debtor neglected to disclose the existence of the Judgment or the Contract Action to the

Court or to the Trustee at any point during her case.  Thus, Mr. Milton did not receive notice of

this case before it was closed; as such, he did not have the right to question Debtor at her § 341

meeting, to vote to elect a trustee, object to Debtor's claim of exemptions,  challenge the

dischargeability of his debt, or object to Debtor's right to receive a discharge.

On December 5, 2014, nearly one year after her case had been closed, Debtor filed a

motion to reopen her bankruptcy case in order to add Mr. Milton's Judgment to her schedules

and "allowing the discharge to be entered" (the "Motion").  [dkt item 19]  In her Motion, Debtor

argues that her failure to disclose the Judgment was inadvertent; although she knew of the

Judgment, she avers that she did not list it in her schedules because she mistakenly believed that

she "was not part of the alleged debt". Debtor further contends that her belief was corroborated

by the fact that the Judgment did not appear on her credit report at the time she filed her petition.

Debtor also somewhat inconsistently states that "[t]he omission of the creditor from Schedule F

was not intentional because the alleged debt was disputed."

Debtor initially failed to serve the Motion on Mr. Milton.

On December 16 and 17, 2014, Debtor filed an amended Schedule F and Statement of

Financial Affairs to which she added the Judgment and the Contract Action, respectively.[2]

On January 5, 2015, Mr. Milton filed a *pro se* objection to the Motion asking the Court to

conduct a hearing on the Motion and for additional time to retain counsel to file a response (the

"Opposition"). [dkt item 24]

The Court held a hearing on Debtor's Motion on February 24, 2015, at which Debtor,

through counsel, and Mr. Milton, now through counsel, appeared. Mr. Milton contended that

Debtor's omission of the Judgment from her schedules was not inadvertent because in the

Contract Action she was served with a summons and complaint, various pleadings, and notices

of hearings, including an inquest, before her bankruptcy filing. Therefore, he argues, Debtor was

on notice of the Contract Action and the Judgment. Noting that the potential for an unsecured

---

[2]Debtor's amended Statement of Financial Affairs and Schedule F are not effective because they were filed while
the case was closed and Debtor's amended Schedule F was not filed or served in accordance with Local Bankruptcy
Rule 1009-1(b). Bankruptcy Rule 1009 authorizes debtors to amend schedules or statements at any time before the
case is closed. FED. R. BANKR. P. 1009(a). Local Bankruptcy Rule 1009-1 requires any amendments to Schedule F
to be accompanied by (i) the Local Form No. USBC-63 entitled "Affidavit Pursuant to Local Rule 1009-1(a)" and
(ii) the filing fee. E.D.N.Y. L.B.R. 1009-1(a). If a creditor is added to the debtor's schedules she must also file an
amended creditor matrix and serve the added creditor with copies of the Local Form No. USBC-63, the amended
schedule, and all notices previously sent to creditors in the case. E.D.N.Y. L.B.R. 1009-1(a)-(b). An amendment is
not effective until proof of its service in accordance with subsection (b) has been filed. Here, Debtor did not file a
Local Form No. USBC-63, has not paid the filing fee and has not docketed proof of service.

debt to be discharged through a bankruptcy case does not constitute legal prejudice, the Court

inquired of Mr. Milton as to what prejudice he would suffer by having this bankruptcy case

reopened.  Mr. Milton only pointed to the time spent and fees he incurred in connection with

prosecuting the Contract Action before Debtor's bankruptcy case had been filed.  Debtor did not

elaborate on her request for a discharge of the Judgment.  At the conclusion of that hearing, the

Court directed Debtor to file an affidavit regarding her failure to schedule the Judgment, and

gave Mr. Milton an opportunity to file a response, after which the Court would take the matter

under submission.  The parties thereafter filed their affidavits.[3]

## Discussion

*1.  The Standard for Reopening a Closed Bankruptcy Case*

Bankruptcy Rule 5010 authorizes debtors or other parties in interest to move to reopen a

closed bankruptcy case within a reasonable time.  *See* FED. R. BANKR. P. 5010, 9024[4].  Section

350(b) of the Bankruptcy Code authorizes courts to reopen a case "to administer assets, to accord

relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  This Court has previously stated

that "[t]he statute's permissive language provides the Court with broad discretion to determine

whether a debtor filed a motion to reopen in good faith or has demonstrated good cause."  *In re*

---

[3] On March 4, 2015, Debtor filed a declaration in support of the Motion (the "Declaration"). [dkt item 26] In her Declaration, Debtor states, "[a]t the time of filing of the instant Chapter 7, I was under the mistaken belief that the alleged debt owed to Jacob Milton was not a debt that I personally owed….Omission of this creditor from Schedule F was not intentional."  Debtor does not provide any reason for her mistaken belief or any other information to support her contention that the omission was inadvertent. On March 16, 2015, Mr. Milton filed a response to Debtor's Declaration. [dkt item 29] Mr. Milton argues that the Declaration is legally insufficient because it provides no factual support and on that basis alone, the Motion should be denied. Mr. Milton provides a more detailed timeline of the events that transpired and the costs that he incurred in connection with the Contract Action; all of the costs that Mr. Milton incurred and the events that transpired were prior to Debtor's bankruptcy filing.

[4] This Court and courts in this district have found as timely motions to reopen filed nearly three years, *In re Warmbrand*, 2013 Bankr. LEXIS 4786 (Bankr. E.D.N.Y. Oct. 17, 2013), eight years, *In re Stein*, 394 B.R. 13 (Bankr. E.D.N.Y. 2008), and fifteen years, *In re Narcisse*, 2013 Bankr. LEXIS 1336 (Bankr. E.D.N.Y. Mar. 29, 2013), after a case was closed. Based on the circumstances presented here, this Court finds that Debtor's Motion was made within a reasonable time.

*Farley*, 451 B.R. 235, 237 (Bankr. E.D.N.Y. 2011).

The decision to reopen a case "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." *Katz v. I.A. Alliance Corp.* (*In re I. Appel Corp.*), 104 F. App'x. 199, 200 (2d Cir. 2004) (quoting *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1307 (2d Cir. 1996)). Although a motion to reopen is generally considered a "ministerial act," in determining whether to grant the motion, it is appropriate for the Court to review the legal merits of the relief sought upon reopening. *See In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010) *aff'd Smith v. Silverman (In re Smith)*, 645 F.3d 186 (2d Cir. 2011). This Court will limit the exercise of its discretion to reopen a closed case "in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources." *Farley*, 451 B.R. at 237.

The moving party carries the burden of proof in establishing cause to reopen. *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) *appeal dismissed* 2012 U.S. Dist. LEXIS 113133 (E.D.N.Y. Aug. 12, 2012). While the Bankruptcy Code does not define what constitutes "cause" under § 350(b), courts have found that "cause to reopen a bankruptcy case includes the need to amend schedules to add assets or creditors". *Stein,* 394 B.R. at 15.

In determining whether cause exists, courts must also consider "whether reopening a case would prejudice the adversary's position." *Id.* at 16 (quoting *In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997)); *see Harbour Trust Co. v. Aaron (In re Plusfunds Group, Inc.)*, 589 F. App'x. 41, 42-43 (2d Cir. 2015) (remanding case to the bankruptcy court to explain what prejudice, if any, would result to the adversary from reopening the case).

In *Warmbrand* this Court articulated a test for determining whether a debtor's case should be reopened to allow a debtor to schedule a previously undisclosed personal injury action

as an asset.[5]  However, a different analysis should be employed to determine whether to reopen a

case to allow a creditor to be added.

2. *Whether an Unscheduled Debt is Automatically Discharged in a No Asset Chapter 7 Case*

Following an opinion by the Eastern District of New York and similar decisions within

the Second Circuit, this Court held that the failure to schedule a prepetition debt in a chapter 7 no

asset case has no impact on the dischargeability of a debtor's personal liability on a mortgage

debt, so long as the debt at issue does not fall within the category of non-dischargeable debts

listed in Sections 523(a)(2), (4) or (6).  *See In re Haemmerle*, 529 B.R. 17, 24 (Bankr. E.D.N.Y.

2015) (following *In re Herzig*, 238 B.R. 5 (E.D.N.Y. 1998) (Hurley, J.).  In *Haemmerle*, this

Court addressed whether a creditor whose mortgage debt was not scheduled violated the debtor's

discharge injunction by repeatedly seeking to collect on the debtor's pre-petition personal

liability several years after the debtor had received his discharge.  To make this determination,

the Court had to first analyze whether the unscheduled debt had in fact been discharged.

Adopting a plain meaning analysis for § 523(a)(3)[6], this Court determined that an unscheduled

---

[5] This Court adopted the following test in *Warmbrand* for determining whether good faith or cause has been established to reopen a case to allow a debtor to schedule a previously undisclosed lawsuit: (1) the debtor's inadvertence in failing to schedule the lawsuit; (2) potential benefit to creditors; (3) indications of forum shopping or other inequitable conduct; (4) prejudice to objecting parties; and (5) benefit to the debtor. 2013 Bankr. LEXIS 4786, at *16. This Court subsequently applied the *Warmbrand* test in *In re Lerner*, 515 B.R. 26 (Bankr. E.D.N.Y. 2014) and *In re Amaya,* 2014 WL 7004848 (Bankr. E.D.N.Y. Dec. 11, 2014) as well as in various unpublished rulings. *See, e.g., In re Boulassikis*, 02-88108 (AST) [dkt item 20] (Bankr. E.D.N.Y. Apr. 11, 2014).

[6] A discharge ...does not discharge an individual debtor from any debt — (3) neither listed nor scheduled ..., in time to permit —

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time to permit such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this sub-section, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request...

debt held by a creditor who had no knowledge of the bankruptcy case is discharged in a no asset

chapter 7 case by operation of law under § 727(b), because § 523(a)(3) only excludes

unscheduled debts from being automatically discharged if the unscheduled debt falls within §

523(a)(2), (4), or (6) and the creditor did not have "notice or actual knowledge of the case in time

to permit" timely filing of a claim.[7]  As noted in *Haemmerle*, in a no asset chapter 7 case,

creditors are directed not to file a claim, unless later advised to do so,[8] and "where there is no

deadline set to file a claim in a no asset chapter 7 case, if the debt at issue does not fall within the

category of non-dischargeable debts listed in Sections 523(a)(2), (4) or (6), there is no deadline

for the creditor to file a timely claim, and, therefore, the creditor could not have notice of actual

knowledge of a deadline to file a claim that has not been set." *Id.*  The Court then went on to

note that because claims that fall within Sections 523(a)(2), (4) or (6) are discharged unless a

timely adversary proceeding is filed as required by Section 523(c) and Bankruptcy Rule 4007 (60

days after the date first set for the creditors meeting held under § 341(a)), due process requires

the creditor to have notice or knowledge of the dischargeability deadline before the otherwise

non-dischargeable claim could be discharged.  *Id.*

---

11 U.S.C. § 523(a)(3)(A)-(B).

[7] This Court also noted in *Haemmerle*, however, that the mortgagee's *in rem* rights had not been discharged, and that a creditor cannot be held liable for a discharge injunction violation absent notice or knowledge; "while Debtor's personal liability on the Loan was discharged despite a lack of notice, Wells Fargo could not be held liable for a discharge injunction violation unless and until it knew Debtor had received a discharge. A creditor's knowledge of the discharge injunction may be actual or constructive." *Haemmerle*, 529 B.R. at 26.

[8] "Rule 2002(e) allows the clerk to issue what has become known as the 'no asset' notice. In a chapter 7 case when there appear to be no distributable assets, the notice of the meeting of creditors may contain a statement to that effect. Creditors are requested not to file proofs of claim and are informed that, should assets later become available, notice of such assets and notice of the bar date for filing proofs of claim will be mailed." 8 COLLIER ON BANKRUPTCY P. 2002.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see* FED. R. BANKR. P. 2002(e), 3002(c)(5).

This plain meaning analysis, also referred to as the "mechanical approach", has been

adopted by the Third, Sixth, Ninth and Tenth Circuit Courts of Appeals[9]; however, the

mechanical approach has been rejected in favor of an equitable approach by the First, Fifth

Seventh and Eleventh Circuits[10]. The Second Circuit has yet to rule on this issue, and there is a

split amongst Second Circuit courts.[11]

Several courts which have followed the mechanical approach have denied a debtor's

motion to reopen a no asset case for the sole purpose of listing an omitted debt on the basis that

doing so would serve no purpose, as the debt in question has already been discharged and thus,

reopening would not afford any relief to the debtor. *See, e.g.*, *Madaj*, 149 at 472 (affirming

bankruptcy court's order denying the debtors' motion to reopen to amend schedules because the

debt had been discharged and amending the schedules would have no effect); *Beezley*, 994 F.2d

at 1435-37 (concluding that because debtor's case was a no asset / no bar date case, and since

dischargeability was unaffected by scheduling the claim, amendment of the schedules was a

pointless exercise). Other courts which have followed the mechanical approach have authorized

---

[9] *See, e.g., Watson v. Parker (In re Parker),* 313 F.3d 1267, 1269-70 (10th Cir. 2002) *cert. denied* 504 U.S. 965 (2003); *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 472 (6th Cir. 1998); *Judd v. Wolfe (In re Judd)*, 78 F.3d 110, 116 (3d Cir. 1996); *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1436-37 (9th Cir. 1993).

[10] *See, e.g., Colonial Sur. Co. v. Weizman*, 564 F.3d 526, 532 (1st Cir. 2009); *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 291 (5th Cir. 1994); *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529, 1534 (11th Cir. 1986); *Stark v. St. Mary's Hosp. (In re Stark)*, 717 F.2d 322, 324 (7th Cir. 1983).

[11] Cases following the mechanical approach include: *In re Deutsch-Sokol*, 290 B.R. 27, 31-32 (S.D.N.Y. 2003), *Herzig*, 238 B.R. at 8, *Haemmerle*, 529 B.R. at 24, *In re Delafield 246 Corp. v. City of New York (In re Delafield Corp.)*, 2007 Bankr. LEXIS 2804, at *6-8 (Bankr. S.D.N.Y. Aug. 14, 2007), *In re Refino*, 288 B.R. 320, 322-23 (Bankr. D. Conn. 2003), *In re Rollinson*, 273 B.R. 352, 353-54 (Bankr. D. Conn. 2002), and *In re Cruz*, 254 B.R. 801, 807 (Bankr. S.D.N.Y. 2000). Cases which do not specify the test or which appear to follow the equitable approach include: *In re Moyette,* 231 B.R. 494, 497-98 (E.D.N.Y. 1999), *In re Thompson*, 152 B.R. 24, 27-28 (E.D.N.Y. 1993), *In re Candelaria,* 121 B.R. 140, 142 (E.D.N.Y. 1990), *In re Weintraub*, 171 B.R. 506, 508 (Bankr. S.D.N.Y. 1994), *In re De Mare*, 74 B.R. 604, 605 (N.D.N.Y. 1987), *In re Maddox*, 62 B.R. 510, 513-14 (Bankr. E.D.N.Y. 1986), and *In re Zablocki*, 36 B.R. 779, 782-83 (Bankr. D. Conn. 1984); *see also In re Taylor*, 2002 Bankr. LEXIS 2062, at *4-7 (Bankr. D. Vt. Aug. 9, 2002); *American Credit Services, Inc. v. Tucker*, 143 B.R. 330, 334-35 (W.D.N.Y. 1992). In these cases, the nature of the debtor's personal liability does not appear to have any effect on the ultimate determination of which approach is utilized.

a debtor to reopen the no asset case to add the omitted debt, despite the underlying debt having

been discharged, because reopening the case would serve some other purpose.  *See e.g.*, *Judd*, 78

F.3d at 113-15 (affirming bankruptcy court's decision to not reopen the case to schedule an

already discharged debt but, nevertheless, remanding the case to consider whether amending the

schedules to ensure the comprehensiveness of the debtor's discharge or allowing the creditor to

participate in a later distribution would be appropriate); *Deutsch-Sokol*, 290 B.R. at 32

(reopening would allow the affected creditor to file a claim and participate in a distribution in the

event assets were later discovered); *In re Cruz*, 254 B.R. at 807 (granting the debtor's motion for

administrative purposes in order to provide a complete schedule of debts).

      Courts which have followed the equitable approach and granted motions to reopen to add

a previously unscheduled creditor have typically afforded the omitted creditors an opportunity to

file a non-dischargeability complaint, relying on the premise that innocently omitted debts are

not automatically discharged in a no asset case, and fraudulently omitted debts are not

discharged at all.  *See, e.g.*, *Stark*, 717 F.2d at 323-34 (holding that the debtor's no asset chapter

7 case should be reopened to schedule an inadvertently omitted creditor and agreeing with the

district court below that "§ 523(a)(3) should not be mechanically applied to deprive a debtor of a

discharge"); *Moyette,* 231 B.R. at 497 (concluding that the omission was an oversight and

reversing the bankruptcy court's denial of the motion to reopen in order to afford the creditor the

opportunity to file a claim and a nondischargeability complaint); *Candelaria*, 121 B.R. at 142

(remanding case to the bankruptcy court to consider whether the failure to schedule the debt was

the result of fraud, or other misconduct, and if not, directing the court to give the creditor time to

file a nondischargeability complaint).  These courts examine the circumstances surrounding a

debtor's failure to list a certain creditor in determining whether to reopen a case to allow the

debtor to schedule the omitted creditor and, thus, obtain a discharge of that debt.  *See id.*

*3. Debtor's Case Should not be Reopened*

In this Court's view, a chapter 7 no asset case should not be reopened to allow an

undisclosed debt to be scheduled unless: (i) the debtor or creditor can state a plausible basis for

seeking a determination that the debt at issue does or does not fall within the category of non-

dischargeable debts listed in Sections 523(a)(2), (4) or (6); or (ii) the creditor can state a

plausible basis for the court to determine that assets may become available to distribute to

creditors; or (iii) prejudice to either party which can be remedied by reopening the case has been

demonstrated.  Mr. Milton has not suggested that the Judgment, which sounded in contract, is a

debt that falls within Sections 523(a)(2), (4) or (6), nor has he suggested that assets may be

available for creditors; further, neither side has demonstrated any prejudice that will result which

can be remedied by reopening the case; therefore, this case will not be reopened. Said otherwise,

no purpose would be served by reopening this case.

Because this Court is following the mechanical approach adopted in cases such as *Herzig*,

which in this Court's view is more consistent with the language of the Bankruptcy Code[12], this

Court need not apply an equitable balancing test, such as the one undertaken by the District

Court in *Moyette*.  However, this Court does note that even if it were to apply the *Moyette* test

and reopen the case, the Judgment would still be discharged.

In *Moyette*, the bankruptcy court denied a debtor's motion to reopen his no asset chapter

7 case to add a previously unscheduled creditor.  Apparently concerned that not reopening the

---

[12] The Court recognizes that § 523(a)(3) has generated considerable divided case law and has long been the subject of academic debate. *See generally*, Hebling and (Hon.) Klein, The Emerging Harmless Innocent Omission Defense To Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts, 69 AM. BANKR. L.J. 33 (Winter, 1995).

case would result in the unscheduled debt not being discharged, the district court reversed, and

because the debtor's omission was inadvertent directed the bankruptcy court to reopen the case

to allow the debtor to amend his schedules but to also afford the creditor a "reasonable time to

file a dischargeability complaint." *Moyette*, 231 B.R. at 500.[13]  The district court also considered

the objecting creditor's claims that it was deprived of various rights afforded to a scheduled

creditor in a no asset case, but noted that "Congress chose not to provide a remedy for creditors

whose only loss was the opportunity to elect a trustee, question the debtor at the meeting of

creditors, object to the debtor's claims of exempt property or object to discharge". *Id.* at 499.

This Court could not conclude that Debtor's omission was a product of fraud,

recklessness or intentional design on her part.  While Debtor's excuses are not completely

satisfactory, there is no evidence before this Court of any advantage that Debtor could have

gained by failing to schedule Mr. Milton, the Judgment or the Contract Action or from which this

Court would conclude that Debtor acted with improper intent.

As for prejudice, as the Judgment has been discharged, and Debtor has not sought to add

the Judgment for the purposes of completeness or accuracy of her schedules; thus, there is no

prejudice to Debtor in denying her Motion.  Further, while Mr. Milton has opposed reopening, he

has not demonstrated cognizable prejudice to him from denying the Motion.  He has not been

deprived of a distribution as there has not been one nor has either party suggested there may be

---

[13] It appears that, in the Second Circuit, reviving an expired deadline to file a non-dischargeability complaint under Section 523(c) and Bankruptcy Rule 4007 would need to be based on a showing that the deadline should be extended due to waiver, estoppel, or equitable tolling. *See European Am. Bank v. Benedict* (*In re Benedict*), 90 F.3d 50 (2d Cir. 1996) (holding that the time period imposed by Bankruptcy Rule 4007(c) to bring a non-dischargeability action is not jurisdictional and may be extended after its expiration by reason of waiver, estoppel, or equitable tolling); *Franzone v. Elias (In re Elias)*, 2014 U.S. Dist. LEXIS 39591, at *12-20 (E.D.N.Y. Mar. 25, 2014) (affirming denial of extensions based on claims of waiver and equitable tolling); *Yesh Diamonds, Inc. v. Yashaya (In re Yashaya)*, 403 B.R. 278, 285-87 (Bankr. E.D.N.Y. 2009) (noting that the deadlines in the Bankruptcy Rules should be interpreted strictly and consistently with the Code's policy of providing a fresh start and then rejecting a complaint that was one day late as untimely, after analyzing the exceptions cited in *Benedict*).

one, and he has not requested that he be allowed to file a claim.  He has not been deprived of an

ability to file a complaint under § 523(a)(2), (4), or (6) as he has not suggested he has any basis

to do so.  While Mr. Milton was not allowed to vote for a trustee in this no asset case, question

the debtor at the meeting of creditors, object to Debtor's claims of exempt property or object to

Debtor's discharge, he has not suggested that reopening this case would remedy any of these.

Thus, he is in no worse a position then he would be if the Court were to reopen the case and

allow Debtor to amend her schedules.

This decision should not be taken as an endorsement of Debtor's failure to schedule Mr.

Milton.  There is no doubt that Debtor should have listed Mr. Milton as a creditor and listed the

Contract Action in her SOFA.  *See* 11 U.S.C. § 521(a)(1); *In re Lowery*, 398 B.R. 512, 515

(Bankr. E.D.N.Y. 2008) ("Full and honest disclosure in a bankruptcy case is crucial to the

effective functioning of the bankruptcy system. Because the bankruptcy court, trustees, and

creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot

be overemphasized").  The narrow issue here is whether this case should be reopened to allow

Debtor to amend her schedules, and this Court has concluded it should not.

## Conclusion

Having considered all of the facts and circumstances present in this closed bankruptcy

case, the Court finds that Debtor's case should not be reopened as Mr. Milton's debt has been

discharged.

Based on the foregoing, it is hereby

**ORDERED**, that pursuant to 11 U.S.C. § 350(b) and FED. R. BANKR. P. 5010, the

Motion is denied.



**Dated: September 4, 2015**
**Central Islip, New York**

              **Alan S. Trust**
     **United States Bankruptcy Judge**